IN THE UNITED STATES DISTRICT
COURT FOR THE DISTRICT OF
MARYLAND
(SOUTHERN DIVISION)

PAIGE HUNT, *et al.*              *

        Plaintiffs,       *

        v.                *       Case No. 8:20-cv-01846-AAQ

CONSTANTINE COMMERCIAL          *
CONSTRUCTION, INC., *et al.*
                          *
        Defendants.
                          *

**MEMORANDUM OPINION AND ORDER**

This is a dispute over unpaid overtime wages and alleged retaliation under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201, *et seq.* and Maryland state law. Pending before the Court is a Joint Motion and Memorandum for Approval of Settlement of said dispute between the parties pursuant to 29 U.S.C. § 216. For the reasons discussed below, the Joint Motion shall be GRANTED, and the case will be DISMISSED.

**BACKGROUND**

The facts of this case are discussed in detail in the Court's Memorandum Opinion accompanying the March 31, 2023 Order denying Plaintiffs' Motion for Summary Judgment and Granting, in Part, and Denying, in Part, Defendants' Cross Motion for Summary Judgment. ECF No. 38. In that context, I will briefly lay out the relevant facts and the developments since that Opinion was published.

Defendant Constantine Commercial Construction Inc. ("CCC") is a commercial construction company owned and managed by Defendant Michael Constantine, President of CCC.

1

ECF No. 38, at 2. Defendant Diana Parsons is the Chief Financial Officer and Director of Administration of CCC. *Id*. Plaintiffs Paige Hunt and Colleen Smith began working at CCC as administrative assistants in March 2014 and September 2017, respectively. *Id*. In that role, their responsibilities "included answering the telephone, receiving mail and packages, greeting visitors, filing documents, assisting with purchase orders, 'submittals,' certificates of insurance, and requests for information, and more generally providing administrative support." *Id*.

Plaintiffs filed their initial Complaint on June 17, 2020. ECF No. 1. Plaintiffs filed an Amended Complaint on March 25, 2021. ECF No. 4. In their Amended Complaint, Plaintiffs alleged claims under the Fair Labor Standards Act, the Maryland Wage and Hour Law, and the Maryland Wage Payment and Collection Law. *Id*. at 6-9. Plaintiffs also alleged gender discrimination, creation of a hostile work environment, and retaliation. *Id.* at 10-14. Defendants filed their Answer on May 3, 2021. ECF No. 6. The Parties engaged in discovery and attended one settlement conference before Magistrate Judge Brendan A. Hurson in an attempt to resolve the matter. ECF No. 26. After concluding discovery, Plaintiffs filed a Motion for Summary Judgment on June 17, 2022. ECF No. 33. Defendants responded in opposition and filed a Cross-Motion for Summary Judgment on August 5, 2022. ECF No. 34. The parties filed their respective Replies, and the Motions were resolved on March 31, 2023 in this Court's Order denying Plaintiffs' Motion and granting in part and denying in part Defendants' Motion. ECF Nos. 38, 39. In that Order, this Court dismissed Plaintiffs' claims alleging sex discrimination on the basis of disparate treatment but declined to dismiss Plaintiffs' remaining claims. *Id*. Following that decision, the parties submitted a Status Report and noted that they were pursuing private mediation to resolve the remaining claims. ECF No. 40. On June 13, 2023, the parties reported that the case had settled and agreed to submit a Motion for Approval of the Settlement by July 7, 2023. ECF Nos. 42, 45.

Still pending are a number of claims against Defendants, including claims for unpaid wages and overtime under the Fair Labor Standards Act. ECF No. 49, at 1. In support of these claims, Plaintiffs allege that they were non-exempt employees during the relevant time period and that, during the term of their employment, they worked overtime hours for which they were not compensated. *Id*. Defendants contest this, arguing that Plaintiffs were exempt from overtime and were paid all wages that they earned. *Id*. In the alternative, Defendants allege that even if Plaintiffs were misclassified, "any overtime worked by Plaintiffs would have been at most *de minimis* given the fact that Plaintiffs' work was performed exclusively in Defendant's business office, which was only open during certain hours Monday to Friday." *Id*. at 1-2.

While neither party has complete time records, Plaintiff Hunt estimates that she worked 51.5 hours per week and Plaintiff Smith estimates that she worked 47 hours per week. *Id*. at 2. Defendants dispute these numbers, denying that Plaintiffs worked any overtime but estimating that, at most, Plaintiffs could have worked an average of two hours of overtime during the weeks they could have conceivably worked overtime: this would mean $8,030.88 in overtime for Plaintiff Hunt accrued over 99 weeks and $6,048.00 for Plaintiff Smith accrued over 84 weeks. *Id*. Plaintiffs' estimates of their lost wages over the same time periods are substantially higher, alleging $46,177.56 accrued for Plaintiff Hunt and $21,158.00 for Plaintiff Smith. *Id*.

Parties have agreed to a settlement that resolves all claims for $115,000.00, comprised of $57,500.00 to Plaintiff Hunt and $57,500.00 to Plaintiff Smith. Under the terms of the settlement, Plaintiff Hunt would receive $11,465.32 in wages, $22,930.65 in statutory damages, and $23,104.03 in attorneys' fees and expenses. Plaintiff Smith would receive $11,478.23 in wages, $22,956.46 in statutory damages, and $23,065.31 in attorneys' fees and expenses. *Id*. at 2-3. After

reaching this agreement, the parties filed the pending Joint Motion for Approval of Settlement and Dismissal on June 27, 2023.  *Id*.

## STANDARD OF REVIEW

When evaluating settlement agreements for approval under the FLSA, courts should approve settlements that "reflect[] a 'reasonable compromise of disputed issues' rather than 'a mere waiver of statutory rights brought about by an employer's overreaching.'"  *Saman v. LBDP, Inc.*, No. DKC 12-1083, 2013 WL 2949047, at *2 (D. Md. Jun. 13, 2013) (quoting *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1354 (11th Cir. 1982).

In making such a determination, typically, district courts in the Fourth Circuit "employ the considerations set forth by the Eleventh Circuit in *Lynn's Food Stores*."  *Id.* at *3 (citing *Hoffman v. First Student, Inc.*, No. WDQ-06-1882, 2010 WL 1176641, at *2 (D. Md. Mar. 23, 2010); *Lopez v. NTI, LLC*, 748 F.Supp.2d 471, 478 (D. Md. 2010)).  These considerations include ensuring there is a "fair and reasonable resolution of a *bona fide* dispute over FLSA provisions" by evaluating: (1) whether there are FLSA issues actually in dispute; (2) whether the settlement is fair and reasonable in light of the relevant factors; and (3) whether the attorneys' fees, if included in the agreement, are reasonable.  *Id.* (citing *Lynn's Food Stores, Inc.*, 679 F.2d at 1355; *Lomascolo v. Parsons Brinckerhoff, Inc.*, No. 08-1310, 2009 WL 3094955, at *10 (E.D. Va. Sep. 28, 2009); *Lane v. Ko-Me, LLC*, No. DKC-10-2261, 2011 WL 3880427, at *2-3 (D. Md. Aug. 31, 2011)).  Evaluation of the aforementioned, with discussion of the relevant facts, follows below.

## DISCUSSION

The parties have asked the Court to approve their proposed Settlement Agreement and dismiss this case.  I find that approval is proper as the Settlement Agreement reflects a fair and

reasonable resolution of a *bona fide* dispute between the parties and includes a reasonable award of attorney's fees and costs.

### A. There is a *Bona Fide* Dispute Between the Parties.

To determine whether a *bona fide* dispute exists as to a defendant's liability under the FLSA, the Court should "examine the pleadings in the case, along with the representations and recitals in the proposed settlement agreement." *Duprey v. Scotts Co. LLC*, 30 F.Supp.3d 404, 408 (D. Md. 2014) (citing *Lomascolo*, 2009 WL 3094955, at *16-17). Disagreement over an employee's classification constitutes a *bona fide* dispute in FLSA cases. *See Smith v. David's Loft Clinical Programs, Inc.*, No. 21-cv-03241-LKG, 2022 WL 16553228, at *4 (D. Md. Oct. 31, 2022) (finding a *bona fide* dispute where plaintiffs alleged that they were misclassified as exempt employees under the FLSA and defendants said they relied on legal advice in making their classification). "Disagreements over rates of pay and hours worked can constitute *bona fide* disputes over a defendant's liability." *Fernandez v. Washington Hospitality Services, LLC*, 8:23-cv-839-AAQ, 2023 WL 4627422, at *2 (D. Md. Jul. 19, 2023). *See Duprey*, 30 F.Supp.3d at 408 (finding a *bona fide* dispute where the "parties disagree[d] about Duprey's rate of pay and hours worked").

In their Joint Motion, the parties highlight the FLSA issues that create a *bona fide* dispute. Here, the parties dispute whether Ms. Hunt and Ms. Smith were correctly or incorrectly classified as exempt employees pursuant to the FLSA. ECF No. 49, at 1. Additionally, the parties dispute the number of hours Plaintiffs worked, which would impact the calculation of damages available if Plaintiffs are found to be non-exempt. In past cases, this Court has found both of these issues to constitute *bona fide* disputes. Accordingly, I find that a *bona fide* dispute exists between the parties under the FLSA.

5

**A. The Settlement Agreement is Fair and Reasonable.**

Next, the Court considers whether a settlement agreement is fair and reasonable. In assessing whether a settlement is fair and reasonable, the Court should evaluate the following six factors: "(1) the extent of discovery that has taken place; (2) the stage of the proceedings, including the complexity, expense, and likely duration of the litigation; (3) the absence of fraud or collusion in the settlement; (4) the experience of counsel who have represented the plaintiffs; (5) the opinions of [ ] counsel . . . ; and (6) the probability of plaintiffs' success on the merits and the amount of settlement in relation to potential recovery." *Saman*, 2013 WL 2949047, at *3 (quoting *Lomascolo*, 2009 WL 3094955, at *10).

The first factor asks courts to consider the extent to which discovery has taken place. When looking at this factor, courts assess whether the parties have "had adequate time to conduct sufficient discovery to 'fairly evaluate the liability and financial aspects of [the] case.'" *Lomascolo*, 2009 WL 3094955, at *11 (citing *In re A.H. Robins Co., Inc.*, 88 B.R. 755, 760 (E.D. Va. 1988)). Here, the parties "participated in discovery, including the exchange of interrogatories and request for production of documents as well as depositions of both Plaintiffs and their supervisor, Defendant Diana Parsons." ECF No. 49, at 4. The parties provided text messages, desk calendars, and other evidence to corroborate their respective positions and support their Motions for Summary Judgment. *Id.* In participating in discovery, the parties gained a fuller understanding of their cases and thus, were better able to engage in settlement. *See Melendez v. Declercq, Inc.*, No. PJM 14-2247, 2016 WL 3387235, at *4 (D. Md. Jun. 14, 2016) ("The parties have completed discovery, and they have therefore had sufficient opportunity to obtain and review evidence, to evaluate their claims and defenses, and to engage in informed arms-length settlement negotiations."). As such, this factor weighs in favor of finding that this Settlement is fair.

The second factor looks to the current stage of the proceedings. Settlements can be found to be fair where proceeding further would be difficult and costly and the parties would prefer to end proceedings before making significant investments in litigation. Here, the parties represent that the only remaining options are settlement and trial, that a "trial would likely not occur for 8-12 months and the parties would incur as much as $50,000.00 each in additional attorneys' fees and expenses in preparation for trial." ECF No. 49, at 4. The desire to avoid the additional time and cost associated with significant litigation bolsters a finding that a settlement is reasonable. *See Atkins v. Sunbelt Rentals, Inc.*, No. PWG-14-1717, 2016 WL 3647610, at *3 (D. Md. Jun. 30, 2016) (finding a settlement fair and reasonable where the parties reached the agreement "after almost two years of pretrial proceedings, having briefed multiple issues on summary judgment" and wished to avoid the cost of trial). Given the parties' joint preference to terminate proceedings early rather than invest time and money in litigation, this factor weighs in favor of finding this Settlement Agreement to be fair.

The third factor assesses whether there has been fraud or collusion in the formation of the settlement. There are no facts presented that suggest either, allowing the "presumption that no fraud or collusion occurred between counsel, in the absence of any evidence to the contrary." *Lomascolo*, 2009 WL 3094955, at *12. The parties attest that, "in negotiating the resolution amount, the parties conducted mediation with retired Judge Carey Deeley," that "[t]he mediation lasted more than 5 hours," and that "[t]here was no fraud in the agreement between the parties." ECF No. 49, at 4-5. While "counsel's opinion and recommendation as to the fairness and reasonableness of a settlement is not to be blindly followed," *Saman*, 2013 WL 2949047, at *5 (citing *Lomascolo*, 2009 WL 3094955, at *12), their representations weigh in favor of approving the Settlement.

Under the fourth factor, courts look to the experience of counsel.  Generally, where counsel is well-versed in the underlying law, courts presume that clients have been appropriately advised on the merits and challenges associated with settlement.  *See Hackett v. ADF Rest. Investments*, 259 F.Supp.3d 360, 366 (D. Md. 2016) (finding a fair and reasonable settlement where counsel had litigated numerous lawsuits involving wage and hour violations).  The parties state that "Plaintiffs' counsel and Defendants' counsel are experienced in investigating, litigating, and settling employment matters, including FLSA claims."  ECF No. 49, at 5.  *See* ECF No. 49-2, at ¶ 9 (detailing Plaintiffs' counsel's experience in wage and hour cases).  Accordingly, I am satisfied that Plaintiffs' counsel is sufficiently experienced in litigating similar matters.

The fifth factor incorporates the opinions of counsel.  Counsels' opinion that the expense and potential duration of litigation weighs in favor of early settlement lends credence to a proposed settlement agreement.  *Castro v. Early Learning Language Academies, LLC*, No. CBD-18-2421, 2021 WL 915106, at *4 (D. Md. Mar. 9, 2021).  In their Joint Statement, both sets of counsel agree that the Settlement is in the best interest of their respective clients given the possibility of a judgment against them and endorse the underlying Agreement.  ECF No. 49, at 5.  This weighs in favor of approving the Settlement.

Applying the sixth factor, courts weigh the probability of a plaintiff's success and the relationship between the amount of the settlement and the potential recovery.  Plaintiffs face multiple challenges before any potential recoveries.  First, both Plaintiff Hunt and Plaintiff Smith must demonstrate that they were misclassified as exempt employees.  If successful, they must then prove the number of hours of overtime they worked: all parties admit the difficulty of proving hours worked, given the lack of complete and accurate time records.  ECF No. 49, at 5-6.  As discussed above, Plaintiffs have the following ranges of recovered overtime depending on whether

Plaintiffs' or Defendants' claimed hours are found to be more accurate: Plaintiff Hunt may recover between $8,030.88 and $46,177.56 and Plaintiff Smith may recover between $6,048.00 and $21,158.00.  Under the terms of the Settlement, Plaintiff Hunt would receive $11,465.32 in wages, $22,930.65 in statutory damages, and $23,104.03 in attorneys' fees and expenses.  Plaintiff Smith would receive $11,478.23 in wages, $22,956.46 in statutory damages, and $23,065.31 in attorneys' fees and expenses.  *Id*. at 2-3.  *Cf. Gue v. Shree Pashuapati Corp.*, No. DKC-21-44, 2021 WL 2414866, at *2 (D. Md. Jun. 14, 2021) (approving settlement in which Plaintiff received, in total, twenty percent of claimed backpay); *Lee v. Ex-Exec Lube, LLC*, No. DLB-19-3195, 2021 WL 1117274, at *2 (D. Md. Mar. 24, 2021) (approving settlement in which Plaintiff received, in total, fourteen percent of claimed backpay).  The relationship between potential and actual recovery is enough to weigh in favor of settlement, since the mere possibility of greater recovery does not make this Settlement unfair.  *See Strother v. OS Restaurant Services, LLC*, No. 8:22-cv-0845-AAQ, 2023 WL 1769733, at *4 (D. Md. Feb. 3, 2023) ("[T]here is also a possibility that Plaintiff is entitled to a lesser amount of damages or no damages at all.  Thus, the probability of full recovery is not so great as to outweigh the benefits of settlement in this case.") (citing *Kuntze v. Josh Enterprises, Inc.*, No. 2:18cv38, 2019 WL 2179220, at *3 (E.D. Va. May 20, 2019)).

      This Settlement does include a general release of claims by the Plaintiff that exceed those specified in the Complaint.  ECF No. 49-1, at 2-3.  Such a release can render the Settlement Agreement unreasonable.  *Duprey*, 30 F.Supp.3d at 410 (referencing *Moreno v. Regions Bank,* 729 F.Supp.2d 1346, 1352 (M.D. Fla. 2010)); *Saman*, 2013 WL 2949047, at *5.  However, so long as the "employee is compensated reasonably for the release executed, the settlement can be accepted" and I do not need to consider the "reasonableness of the settlement as to the non-FLSA claims."

*Duprey*, 30 F.Supp.3d at 410. *See Gue*, 2021 WL 2414866, at *1 (finding settlement reasonable despite presence of general release); *Lee*, 2021 WL 1117274, at *1 (same).

Upon consideration of these factors, the Court finds the Settlement to be fair and reasonable.

**B. The Settlement Agreement Awards Reasonable Attorneys' Fees.**

The Settlement Agreement must also contain reasonable provisions for allocating attorneys' fees. *Duprey*, 30 F.Supp.3d at 411. The parties in this case have agreed to a total payment of $46,169.34 in fees and expenses, with $22,930.65 coming from Plaintiff Hunt's settlement and $23,065.31 coming from Plaintiff Smith's settlement. ECF No. 49, at 2-3.

"Ultimately, of course, any award of attorneys' fees to Plaintiff will turn on application of the traditional lodestar methodology factors." *Saman*, 2013 WL 2949047, at *6. The lodestar approach "multiplies 'the number of hours reasonable expended . . . by a reasonable hourly rate' to achieve 'an objective basis on which to make an initial estimate of the value of a lawyer's services.'" *Quevedo v. HBJ, Inc.*, No. PWG-14-734, 2014 WL 3970173, at *5 (D. Md. Aug. 13, 2014) (citing *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983)). Under the lodestar approach, an hourly rate "is reasonable if it is 'in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation.'" *Duprey*, 30 F.Supp.3d at 412 (quoting *Blum v. Stenson*, 465 U.S. 886, 890 n. 11 (1984)). In determining the reasonableness of the billing rates and hours worked to be used in a lodestar calculation, the United States Court of Appeals for the Fourth Circuit has directed courts to consider the factors set forth in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974) (the "Johnson factors"):

> (1) the time and labor expended; (2) the novelty and difficulty of the questions raised; (3) the skill required to properly perform the

> legal services rendered; (4) the attorney's opportunity costs in pressing the instant litigation; (5) the customary fee for like work; (6) the attorney's expectations at the outset of the litigation; (7) the time limitations imposed by the client or circumstances; (8) the amount in controversy and the results obtained; (9) the experience, reputation and ability of the attorney; (10) the undesirability of the case within the legal community in which the suit arose; (11) the nature and length of the professional relationship between attorney and client; and (12) attorneys' fees awards in similar cases.

*Saman*, 2013 WL 2949047, at *6 (citing *Barber v. Kimbrell's Inc.*, 557 F.2d 216, 226 n. 28 (4th Cir. 1978)). "[A]n attorneys' fee award negotiated pursuant to a contingent-fee arrangement can be approved if the court finds (1) that the fees were negotiated separately from the damages, so that they do not infringe on the employee's statutory award, and (2) that they are reasonable under the lodestar approach." *Quevedo v. HBJ, Inc.*, No. PWG-14-734, 2014 WL 3970173, at *5 (D. Md. Aug. 13, 2014).  This Court maintains guidelines regarding appropriate hourly rates in Appendix B to its Local Rules (D. Md. Jul. 2023).  The guidelines rate for lawyers admitted to the bar for more than twenty years is $300 per hour to $475 per hour.  The guidelines rate for lawyers admitted to the bar for between five and eight years is $165 per hour to $300 per hour. *See Saman*, 2013 WL 2949047, at *7 ("Moreover, any request for attorneys' fees must comport with the requirements and guidance set forth in Local Rule 109 and Appendix B to the Local Rules.").

Often, attorneys discount their total award when asking for settlement approval. *See Majed Tomeh v. Veriphyr, Inc.*, No. 8:21-cv-02914-AAQ, 2022 WL 1422897, at *4 (D. Md. May 5, 2022) (awarding counsel's request of $30,000 to compensate for $45,200 in fees and costs incurred); *Galizia v. Ricos Enterprises, Inc.*, No. DKC 21-2592, 2022 WL 374511, at *3 (D. Md. Feb. 8, 2022) ("Clearly, the fee requested is a small percentage of the actual fees incurred and is entirely reasonable."); *Nyamira v. Little Kampala Services, LLC*, No. DKC 17-3379, 2018 WL 5026371,

11

at *4 (D. Md. Oct. 17, 2018) (awarding counsel's request for $1,500 in fees to compensate for over $11,000 in fees and costs incurred).

Since the parties aver that the fees were negotiated separately from the damages to be paid to Plaintiffs, *id*., the remaining question is whether the fees are appropriate under the lodestar approach.[1] In the Joint Motion, Plaintiffs' counsel represents that they have billed approximately 125 hours over the course of this case, resulting in total incurred fees of approximately $45,000. ECF No. 49, at 7.[2] Counsel calculated this number by representing that they have billed approximately 125 hours of attorney time, billed at $565.00 per hour for the thirty hours expended by Neil Hyman and at $300.00 per hour for the ninety-five hours expended by Christopher J. Smith. *Id*. While Mr. Smith's rate is within the guidelines under Appendix B, Mr. Hyman's rate exceeds them. Mr. Hyman has not provided an explanation for the higher rates charged. Were the Court to adjust the lodestar to the recommended rate, the attorneys' fees would be reduced by approximately $2,700. While the "Court hesitates to completely embrace the hourly rates employed by each time keeper," this upward departure resulted in a relatively small increase compared to the total fee award and the total settlement due in part to the fact that Mr. Hyman's hours constituted less than one third of the total hours billed. *See Leon v. Alvarez*, No. CBD-16-0416, 2017 WL 4236813, at *5 (D. Md. Sep. 25, 2017) (upholding the fee award given the "*de minimis* nature of the adjusted billable amount" and the "various factors weighed [in] support [of] counsels' assertions that the fees are reasonable."). In reviewing Plaintiffs' counsel's Attorney

---

[1] Counsel initially "accepted this case on a contingent fee basis, establishing a fee equal to 40% of any settlement or verdict obtained in this matter." ECF No. 49, at 7. The requested fee award is almost precisely 40% of the total settlement.

[2] *But see* ECF No. 49-2, at 1 ("Plaintiff's counsel expended approximately 80 hours for the work necessary to bring this case to resolution.").

Fee Petition, ECF No. 49-2, and discussion of the *Johnson* factors, it is appropriate to find the current fee award reasonable.

Counsel also requests $2,169.34 in reimbursement for litigation costs. ECF No. 49, at 7. While counsel does not enumerate these costs, it can be gleaned from the record that this amount is reasonable given the federal filing fee, costs of serving process, and costs associated with multiple depositions. As such, I find the requested reimbursement reasonable.

## CONCLUSION

For the reasons stated above, the Joint Motion for Judicial Approval of Settlement will be GRANTED and this case shall be DISMISSED with prejudice.

So ordered.

Date:   August 4, 2023              _____/s/_____
                                    Ajmel A. Quereshi
                                    United States Magistrate Judge